UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



JESUS SANCHEZ-LEDESMA, 62773-298,
          Petitioner, Pro Se,


          v.                                    Case No: 3-24-cv-604-CWR-LGI


WARDEN WINGFIELD, FCI YAZOO CITY LOW 1,
          Respondent


MOTION CHALLENGING EXECUTION OF
FEDERAL SENTENCE PURSUANT TO
28 USC 2241


SUMMARY

    Mr. Sanchez has earned 960 days of First Step Act Time Credits. Those time credits now exceed the days remaining on his sentence. As of 10-1-2024, Mr. Sanchez should have been transferred to prerelease home confinement on 10-14-2023 (a year ago).

    This is another case of the Bureau's unbridled abuse of authority under the color of law. The FSA promises "earn time credits — go home". The BOP refuses to honor that promise. It's actually criminal.


Does the BOP's authority exceed constitutional rights, federal law, and judicial dicta?

1

FACTUAL BACKGROUND

Mr. Sanchez plead guilty to 1 count of 21 USC 841(a)(1) and 846 conspiracy to distribute methamphetamine.  He was sentenced on 4-26-2019 to 120 months and 5 years of supervised release.  To date Mr. Sanchez has no final order of deportation, nor has he waived his right to a hearing regarding any such deportation.

At partial controversy in this case is the BOP's manipulation of the FSA system in order to deem Mr. Sanchez ineligible for time credits under the First Step Act of 2018.  When, in fact, Mr. Sanchez is eligible.  (Exhibit 1)

The BOP's manipulation of the FSA system is in direct conflict with the plain language of the statute, 18 USC 3632(d)(4)(E)(i), which requires a final order of deportation to be ineligible.  He has earned time credits he wants applied.  And that application is now more than a year past due. (Exhibit 3)

ARGUMENT

I.

The BOP's discretionary authority regarding the First Step Act is limited. Congress even limited the BOP's "subjective" authority via section 602 of the First Step Act, amending 3624(c), regarding the Second Chance Act.

(A)

The BOP has no discretionary authority over who is, and is not, eligible under the First Step Act.

The FSA is unambiguous in its language.  18 USC 3632(d)(4)(D)(i)-(lxviii) enumerates 68 specific offenses and the specific conditions that render them ineligible.

The Bureau stipulated to this fact on 1-19-2022.  "It is outside the Bureau's authority to alter the exclusions of the FSA."  (28 CFR Parts 523 and 541, FR. Vol. 87, No. 12, pg. 2713).

Mr. Sanchez's offenses are not among the 68 enumerated offenses.  Therefore he must be eligible. The BOP stipulates this. (id Exhibit 1)

(B)

The Bureau voluntarily waived their discretionary authority to deny Mr. Sanchez a year off his sentence.

18 USC 3624(g)(3) "...[t]he Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." [emphasis added]

"Statutory construction is a holistic endeavor and a provision is often clairified by the remainder of the statutory scheme." United Sav. Ass'n of Tex. v. Timbers of Inwood Forest, 484 US 365, 371 (1988). So 3624(g)(1) identifies woho and when a prisoner is eligible for transfer to prerelease custody; (g)(2) prioritizes the prerelease options, (A) home confinement, if not available then (B) halfway house; (g)(3) allows the Director to grant a prisoner, (who is obeying all the "prerelease custody" rules) up to 365 days of his credit, to begin his term of supervised release sooner.  It's an incentive for doing the right things while on home confinement.  This is proven when reviewed against 3632(d)(4)(A)(i) and (ii), because no such divisional language is present.  Nor is there any language in 3632(d)(4) identifying the 12 months off a prisoner's sentence.  Whether Mr. Sanchez earned FSA Time Credits at a rate of 10 days per 30, or 15 per 30, all credit earned is the same.  18 USC 3632(d)(4)(C) "...SHALL be applied to time in prerelease custody or supervised release." [emphasis added]

The Bureau has adopted the policy that the first 365 FSA Time Credits earned go to reduce the prisoner's sentence by a year. (Exhibit 3, "FTCs Toward Release: 365").  By granting the first 365 earned time credits for sentence reduction the Bureau has voluntarily waived its discretionary authority

3

found in 18 USC 3624(g)(3).

(C)

The Bureau has adopted an impermissible interpretation of federal law.

18 USC 3632(d)(4)(B).  "A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed - (i) prior to the date of enactment of this subchapter; or (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a)."

"An agency cannot adopt an impermissible reading of the statute - ie a reading that exceeds the gap left by Congress." Batterton v. Francis, 432 US 416, 428 (1997).

The Bureau's interpretation is impermissible in that the BOP begins its calculation of when Mr. Sanchez began earning time credits based on the date he arrived at a prison facility.  The statute says "the date the prisoner's sentence commences."  See Yufenyuy v. Warden, No. 22-CV-443, 2023 US Dist Lexis 40186 (D. N.H. Mar. 7, 2023) ("Here the date established by the plain language of the FSA...to begin earning FSA Time Credits as [date sentenced].  The regulation and definition of a different date is contrary to the express language of the FSA."); also see Patel v. Brown, Case No. C23-937, 2023 US Dist Lexis 174601 (W.D. Wash. Sept. 28, 2023) ("Because section 523.42(a) sets a timeline that conflicts with the unambiguous statute...the Court must give effect to statutory text."); and HuiHui v. Derr, Case No. 22-00541, 2023 US Dist Lexis 106532 (D. Hawaii. June 20, 2023) ("There is error in the BOP understanding of when petitioner can begin earning time credits under 18 USC 3632(d)(4)(B)...").

Mr. Sanchez provides the following calculations of his earned time credits from the date of sentence and date committed. (A difference of 60 days +/-)

| | Date | Description |
|---|---|---|
| (a) | 04-26-2019 | Start of sentence |
| | 06-20-2019 | Committment date |
| (b) | 02-22-2026 | Statutory release date (Exhibit 1) |
| (c) | 10-01-2024 | Current date (earn as you go method) |
| (d) | 10-23-2019 | End of calculation at 10 per 30 (180 days from (a)) |

BOP Formula for Calculation:

(a) to (d) = (total days calculated at 10 per 30)

(d) to (b) or (c) = (total days calculated at 15 per 30) (Note 1)

(total days calculated at 10 per 30) / 30 = (FTC multiplier at 10 (round down)) (Note 2)

(total days calculated at 15 per 30) / 30 = (FTC multiplier at 15 (round down))

(FTC multiplier at 10) * 10 = (ETCs at 10 days)

(FTC multiplier at 15) * 15 = (ETCs at 15 days)

(ETCs at 10 days) + (ETCs at 15 days) = (total ETCs)

(b) - (total ETCs) = (mandatory transfer to prerelease home confinement)

    NOTE 1: If calculating on the BOP approved front load method (posted 11-22-23) (Exhibit 6) then use (b) statutory release date. If calculating on the "earn as you go method" then use (c) current date.

    NOTE 2: The BOP does not "prorate" days. Costing prisoners as much as another 30 days of earned time credits. Wouldn't an easier way be ((total days at 10 per 30/3) + (total days at 15 per 30/2) = (total ETCs)?

Utilizing the Bureau's convoluted mathematical formula and "earn as you go" and calculating from "date of sentencing" Mr. Sanchez has earned 960 days

of ETCs and his transfer date to prerelease custody (home confinement) was
10-14-2023.

If the court prefers, the calculation using the Bureau's own front load
approach to calculate Mr. Sanchez's conditional release date means his mandatory
conditional release pursuant to 3632(d)(4)(C) would have been 10-22-2022 (24
months ago).  (Exhibit 6, pg. 10)

Neither of thse dates include the Second Chance Act incentives.  The
maximum benefits of which would move Mr. Sanchez's prerelease transfer dates
to 10-14-2022 or 10-22-2021, respectively.

(D)

The Bureau has adopted an impermissible interpretation of the Second Chance Act.

(i)

Mr. Sanchez was told, point blank, by a BOP staff member, "You don't get
Second Chance Act if you get FSA." (quote uncredited out of fear of retaliation).

The Bureau's position is untenable.  18 USC 3632(d)(6) "The incentives
described in this subsection SHALL be in addition to any other rewards or
incentives for which a prisoner may be eligible." [emphasis added]  This
is further quantified in 18 USC 3624(g)(1)(C) "has had the remainder of the
prisoner's imposed term of imprisonment computed under applicable law."

Those applicable laws would include 3624(b) Good Conduct Time and 3624(c)
halfway house/home confinement (commonly the Second Chance Act benefits) and
3621(e) the RDAP year, had Mr. Sanchez taken RDAP.  (He did not).  These, by
plain language of the statute, apply.

(ii)

The Bureau has fortified their position by further stating "the Second Chance
Act is optional."

This is also an untenable position for the BOP. Title V of the First Step Act reauthorized the Second Chance Act. Title VI, section 602 amended 18 USC 3624(c)(2) "The Bureau of Prisons SHALL, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the MAXIMUM amount of time permitted under this paragraph." This is further quantified in 34 USC 60541(a)(2) "Incentives for a prisoner who participates in reentry and skills development programs, which may...include (A) the maximum allowable period in a community confinement facility."

60541 does allow "at the discretion of the Director." But this discretion however is a house of mirrors. While the Second Chance Act may be "subjective" based on the five factor review defined therein, it is NOT optional.

The Bureau further hangs their hat on the hook, "to the extent practicable." But practicable is defined as:

> Practicable: capable of being put into practice
> or being done or accomplished
> (Merriam-Webster's Collegiate Dictionary, 10th Ed.
> (1997))

The Bureau has multiple policies in place regarding halfway house and home confinement. PS7300.09 (CN - 3) (dated 8-16-2016) "Community Corrections Manual"; PS7310.04 (dated 12-16-1998) "Community Corrections Center (CCC) Utilization and Transfer Procedures"; and PS7320.01 (CN - 2) (dated 12-15-2017) "Home Confinement". Glaringly, none of these has been updated since the enactment of the FSA. So none contemplate the impact that law has had on these policies. 7310.04 hasn't been updated since 1998, a decade before the Second Chance Act was signed into law.

More importantly, the Bureau has been capable of transferring prisoners to prerelease custody for over 25 years, and now...they aren't? Honestly, "even a dog knows the difference between being tripped over and being kicked." (O.W. Holmes Jr., "The Common Law" (1881)) The amended 3624(c) identifies

Low Risk, Low Needs prisoners should get the maximum.  Mr. Sanchez is both
low risk and low needs.  Wouldn't that make him eligible for the full benefits
of 3624(c)?  Mr. Sanchez contends it does.  The Bureau's obfuscation is a
blatant abuse of authority.

II.

Mr. Sanchez has a liberty interest in the time credits he has earned.

(A)

Prisoners have a liberty interest in being released on time, in conformity
with the sentence imposed and other relevant laws; such as GCT, the FSA, and
SCA.

(i)

The Bureau's adoption of a "days in prison" approach to the FSA's categorically
"programming" approach makes FSA Earned Time Credits the equivalent of an
advanced form of GCT.

   The Bureau has made clear in a Memorandum dated August 30, 2022 (Exhibit 5)
bullet point 1; "The earning of FTCs is based on the inmate being in 'earning
status' not the participation and/or completion of individual programs."
The courts have generally agreed;  see Bray v. Yates, 2023 US Dist Lexis 63520,
2023 WL 2894918 at *6 (E.D. Ark. Apr. 11, 2023) (repeatedly cited).  While
that and similar decisions stand on the shoulders of the now defrocked Chevron.
Mr. Sanchez concedes the "days in prison" approach.

(ii)

Mr. Sanchez has shown in (I)(C) of the petition he is now over-incarcerated
by as much as 12 to 36 months.

   Mr. Sanchez has a liberty interest in being released on time, in conformity

8

with the sentence imposed and all other relevant laws; such as those providing for good conduct time, FSA Time Credits, and SCA.  The Court in Nelson v. Cox, 2021 US Dist Lexis 266685 (D. S.D. Nov. 24, 2021) ("The Supreme Court held that government discretion precludes the creation of a liberty interest when 'the decision maker is not required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or no reason at all.'"  (citing Olim 461 US at 249) (quoting Conn. Bd. of Pardons v. Dumshcat, 452 US 458, 467 (1981) (Bremer, J. concurring))  The Court in Nelson continued, "The BOP has no discretion under the Act to deny all the time credits...[petitioner] has successfully stated a claim that he has a liberty interest in conditional release." (id)

Mr. Sanchez has shown that the Bureau's discretionary authority under the FSA is limited at best (pet at (I)).  See also Abed v. Armstrong, 209 F. 3d 63, 66-67 (2nd Cir 2000) (holding "prisoners have no liberty interest in the opportunity to earn good time credit where prison officials had discretion to determine eligibility for good time.")  Mr. Sanchez agrees that "FSA Earned Time Credits" and "Good Conduct Time" are different; the Bureau's "days in prison" blurs that distinction where their discretionary authority would reside. And the Bureau further stipulated they have NO authority over who is and who is not eligible.  (id at pet at (I)(A)).

(B)

The Fifth Circuit previously addressed this issue in Gutierrez v. Hijar, 2023 US Dist Lexis 8339 (5th Cir Jan 18, 2023) and Hassan v. Hijar, 2023 US Dist Lexis 18226 (5th Cir Feb. 3, 2023) both rejecting the liberty interest argument citing Gallegos-Hernandez v. United States, 688 F. 3d 190, 194-96 (5th Cir 2012) in which the Fifth Circuit Court of Appeals addressed a prisoner's

challenge to the constitutionality of a BOP regulation which excludes his participation in early release programs based on his status as a non-citizen with a detainer...citing 28 CFR 550.55 ("as an exercise of the Director's discretion, the following categories of inmates are not eligible for early release: (1) Immigration and Customs Enforcement detainees.")

In this case, Gallegos is inapplicable because Congress addressed the detainer issue in 18 USC 3632(d)(4)(E) holding ineligible only those with a final order of deportation. Mr. Sanchez is a foreign national, but does not have a final order of deportation. (id at Exhibt 1) This was further fore-closed in support of (d)(4)(E) in Komando v. Luna, 2023 WL 310580 at *4-8 (D. N.H. Jan. 13, 2023) (transfer to prerelease custody was not required despite outstanding detainer; rejecting argument that the BOP had discretion to determine which prisoners were suitable for placement in prerelease custody.) (collecting cases). The Bureau stipulated (but doesn't comply with) its Memorandum on Pending Charges (Exhibit 7), "under the FSA individuals...have earned Time Credits, are eligible to apply those additional credits toward halfway house or home confinement, regardless of their detainer status." Foreclosing that court's objection to liberty interest there.

The Hassan and Gutierrez courts continued, (quoting Hassan) "But earned time credits - as determined by the BOP - are applied toward time in prerelease custody or supervised release. id 3632(d)(4)(C). And the Director may transfer a prisoner into prerelease custody or supervised release based on earned time credits only in accordance with 3624. id 3624(b) and (c)." [emphasis added] It's clear the court mixed its metaphors. 3632(d)(4)(C) is unambiguous. "The Director of the Bureau of Prisons SHALL" (not "May"), and "as determined under 3624(g) [18 USC 3624(g)]." (not (b) or (c)). This misrepresentation of the plain text of the statute effectively "put a finger on the scales of

justice." <u>Loper Bright Enterprises v. Raimondo</u>, 22-541, 603 US (June 28, 2024) (Gorsuch, J. concurrance) (citing <u>Buffington v. McDonough</u>, 142 S. Ct. 14, 214 L. Ed. 2d 206 (Nov. 7, 2022))

The <u>Hassan</u> court further relied on inapplicable case law referencing both <u>United States v. Wilson</u>, 503 US 329, 335, 112 S. Ct. 1351, 117 L. Ed. 2d 593 (1992) (citing 18 USC 3621(a).) <u>Wilson</u> is inapplicable or at least incorrectly applied wherein the reference to 28 CFR 0.96 "The Director... is authorized to exercise or perform any of the authority, functions or duties conferred or imposed upon the Attorney General by any law relating to the committment, control or treatment of persons...convicted of offenses against the United States." [i]t has already been concluded - the First Step Act confers no such authority on the Director to deny the mandates of 3632(d)(4)(C) and 3624(g)(1), (2), and (3). Even the time limits of 3624(b) and (c) do not apply under the FSA. (id at 3624(g)(10)).

The second case the <u>Hassan</u> court relied on was <u>Leal v. Tombone</u>, 341 F. 3d 427, 428 (5th Cir 2003) ("The Attorney General through the Bureau of Prisons (BOP), determined what credit, if any will be awarded to prisoners for time spent in custody prior to their commencement of their federal sentence; 18 USC 3585(b).") This is wholly inapplicable in that 3632(d)(4)(B)(ii) addresses presentence jail time as specifically ineligible. FSA calculation begins "the date the sentence commences under 3585(a)."

This leaves no safe harbor for that court's contention <u>Hassan</u> or <u>Gutierrez's</u> argument lacked validity. To the contrary, the repeated use of the word <u>SHALL</u> throughout the FSA gives creedence to the contention a liberty interest exists in the Time Credits earned, as well as any other benefits for which he is eligible, as well as congressional determination the BOP follow its written law rote.

(C)

The Respondent will argue they have discretionary authority to determine Mr. Sanchez's place of confinement.

This argument has been foreclosed by the Supreme Court in <u>Loper</u>, 603 US__(2024) ("Today the Court places a tombstone on <u>Chevron</u> no one can miss.") (Gorsuch, J. Concurrance). Meaning the BOP must comply with the law as written. As well as numerous courts. See <u>Doe v. Fed Bureau of Prisons</u>, 2024 WL 455309 at *1-4 (S.D. NY Feb. 5, 2024) (transfer to prerelease custody was required); <u>Ramirez v. Phillips</u>, 2023 WL 8878993 at *4 (F.D. Cal. Dec. 22, 2023) (agreeing to transfer to prerelease custody mandatory, the BOP has no discretion); <u>Woodley v. Warden</u>, 5:24-CV-3053-JWL (D. Kan. May 15, 2024) (transfer was required despite bedspace availability. "No such qualifying language is found in the <u>mandate</u> of 3632(d)(4)(C) or the eligibility requirements of 3624(g)." [emphasis added]); <u>Pillow v. Bureau of Prisons</u>, 2022 US Dist Lexis 177789 (8th Cir 2022); <u>Stewart v. Snider</u>, 2022 US Dist Lexis 100512 (11th Cir 2022); <u>Jones v. Engleman</u>, 2022 WL 6363744 at *9-13 (C.D. Cal. Sept. 7, 2022).

This argument is foreclosed in favor of Mr. Sanchez. A liberty interest exists in the Time Credits he has earned and the Bureau refuses to apply them.

III.

The actions of the BOP, its officers and employees constitute deliberate indifference, a violation of the Fifth Amendment.

"Deliberate indifference standard governs both due
process and Eighth Amendment claims."
<u>McCurry v. Moore</u>, 242 F. Supp. 2d, 1167,
1180 (N.D. Fla. 2002)

(A)

Congress was unambiguous regarding who and how the DOJ and its downline agencies were to implement the First Step Act.

18 USC 3632 (a) "The Attorney General...SHALL develop and release publicly... a risk and needs assessment system. (referred to...the 'System')..." [emphasis added]

This system included determination of recidivism risk score, needs assessment, and by necessity, Time Credits calculations. Congress was further explicit in its expectations of those agencies.

18 USC 3632(f) "The Attorney General SHALL develop and implement training programs for Bureau of Prisons employees responsible for administering the system which SHALL include - (1) Initial training to educate officers and employees on how to use the system in an appropriate and consistant manner...; (2) continuing education; (3) periodic training updates; (4) a REQUIREMENT that such officers and employees DEMONSTRATE COMPETENCE in administering the system in an appropriate and consistent manner..." [emphasis added]

If the BOP, its officers and employees are required to demonstrate competence in the administration of the FSA, then the fact that Mr. Sanchez is still in Yazoo City Low 1 and not at home confinement can mean only one of two things: (1) they are fully trained on the actual requirements of the FSA, pursuant to 3632(f). Which means the officers and employees of the BOP are knowing and willful participants in a conspiracy - to deprive Mr. Sanchez of rights and privileges afforded him--under color of law. Which constitutes a criminal conspiracy under 18 USC 241 and deprivation of rights under color of law under 18 USC 242. "If official authorizes a system to deprive persons of life, liberty or propery, it is irrelevant whether they intend that it violate due process." Sample v. Diecks, 885 F. 2d 1099, 1114 (3rd Cir 1989). Also see

Teague v. Quarterman, 482 F. 3d 769, 777-780 (5th Cir 2007) (holding that "deprivation of any amount of good time is a liberty deprivation, rejecting the argument that any good time loss can be de minimus."); or (2) they aren't. Which should concern this court even more.

(B)

The Supreme Court has also made it clear that agencies, such as the BOP, are required to follow the law as written. (id at Loper)

"Agencies have only those powers given to them by Congress, and 'enabling legislation' is generally not an open book to which the agency [may] add pages or change the plot line." E. Gellhorn & P. Verkuil, "Controlling Chevron-Based Delegations", 20 Cordoza L. Rev. 989, 1011 (1999) "We presume that 'Congress intends to make major policy decisions itself, not leave those decisions to agencies.'" United States Telecomm Assoc. v. FCC, 855 F. 3d 381, 419, 428 US App DC (C.A. DC 2017) (quoting West Virginia v. EPA, 142 S. Ct. 2587, 213 L. Ed. 2d 896 (2022). This is further foreclosed in the recent Supreme Court decision in Loper, 22-451, 603 US__(2024) ("Agencies have no special competence to resolve statutory ambiguities. Courts do.")

Nothing in the FSA allows for the Bureau to misapply that law at the expense of those who are beneficiaries of that law (ie Mr. Sanchez). But the FSA goes further and statutorily requires BOP officers and employees to demonstrate competence and use the system in an appropriate and consistent manner.

Is it appropriate for Mr. Sanchez to be 12 months beyond his transfer to home confinement date? Mr. Sanchez thinks not.

LEGAL STANDING

28 USC 2241

Mr. Sanchez properly files this motion under 28 USC 2241 to challenge the execution of his incarceration by the BOP.  Not the conviction itself. "Habeas corpus petitions filed pursuant to 28 USC 2241 are generally used to challenge the manner in which a sentence is being executed." Warren v. Miles, 230 F. 3d 688, 694 (5th Cir 2000).

Mr. Sanchez is a federal prisoner currently in custody at the Federal Prison Low 1 in Yazoo City, MS.  This facility and Mr. Sanchez are both within the jurisdiction of the Southern District of Mississippi, Northern Division in Jackson, MS.  "Writ of habeas corpus can be sought by federal prisoner only from the district court with jurisdiction over either prisoner or his custodian." Blau v. United States, 566 F. 2d 526, 1978 US App Lexis 12991 (5th Cir 1978).

42 USCS 1997e(a) Prison Litigation Reform Act (PLRA)

Mr. Sanchez has made repeated attempts to comply with the Administrative Process but the BOP has refused, thus far, to reply to the BP-8 submitted on or about September 9, 2024.  (Exhibit 4)

The PLRA pursuant to 1997e(a) has made congressional intent clear regarding the exhaustion of Administrative Remedies.  Mr. Sanchez attempted the process. PS1330.18 át (12) says no answer at one level in the time alloted is a denial. Yet to file at the next level based on the "no reply" is rejected.  The only saving opportunity to file at the next level without the response at the previous level is to include a print out of the Administrative Remedy Index.  Repeated requests for the ARI is met with looks of utter confusion.  The staff claim no knowledge of what the ARI is.  So the process is doomed to fail before it starts.

The courts, including the Supreme Court, have recognized a narrow window of exceptions to the exhaustion requirements. "A prisoner must exhaust all 'available' remedies." Woodford v. Ngo, 548 US 80, 90-91, 120 S. Ct. 2378, 165 L. Ed. 2d 368 (2006); also see Ross v. Blake, No. 15-399, 136 S. Ct. 1850, 195 L. Ed. 2d 117 (2016); Hessbrook v. Lennon, 777 F. 2d 999, 1003 (5th Cir 1985) ("Exception to the exhaustion requirements are appropriate where 'available' administrative remedies...are unavailable."); and Hill v. Snyder, 817 F. 3d, 1037 (7th Cir 2016) ("Exhaustion is not required when prison officials...refuse to give them forms.")

Also relevant to Mr. Sanchez's case is that he is now beyond his mandatory transfer to home confinement date. Therefore he is being held in violation of the 5th Amendment. This is now an issue of law, outside the purview of the BOP as a matter of course — if they weren't willfully violating the law Mr. Sanchez would be in home confinement and no controversy would exists See generally Pillow v. Bureau of Prisons, 2022 US Dist Lexis 177789 (8th Cir 2022) supporting Stewart v. Snider, 2022 US Dist Lexis 100482, 2022 WL 2019695 (N.D. Ala. June 6, 2022) (a case in which exhaustion requirement was excused in part because of the prisoner's impending release date). For Mr. Sanchez that date has come and gone. 10-14-2023 (Or 10-14-2022 when the SCA is contemplated).

Thus Mr. Sanchez has complied with 'available' remedies. (Exhibit 4) "The burden of proof for demonstrating futility of administrative remedies rests on the petitioner." Fillingham v. United States, 876 F. 3d 531, 535 (5th Cir 2017). Mr. Sanchez believes he has met that burden.

5th Amendment of the Constitution:  Due Process Clause.

> "No person shall...be deprived of life, liberty,or property
> without due process of law."

"Questions of procedural due process involve two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the [BOP]...; the second examines whether the procedures attendent upon that deprivation were constitutionally sufficient." <u>Kentucky Department of Corrections v. Thompson</u>, 490 US 454, 460, 109 S. Ct. 1904 (1989)

Mr. Sanchez has met the burden of step one — a liberty interest exists. The "procedures attendent upon that deprivation" are all found statutorily in 18 USC 3632(d)(4), 3632(f), and 3621(b), (c), and (g).  These statutes have held as constitutionally sufficient, meeting the burden of step two.

Ripeness

Mr. Sanchez's case is ripe for review because he is now beyond the mandatory conditional release date by as much as 3 years.

Subject Matter Jurisdiction

Mr. Sanchez raises sufficient questions of law including deprivation of rights under color of law.  Controversy exists sufficient for Art III of the United States Constitution

Pro Se' Litigant

Pro Se' filings must be "liberally construed." <u>Estelle v. Gamble</u>, 429 US 97, 106, S. Ct. 285, 50 L. Ed. 2d 251 (1976); also see <u>Urbina v. Thomas</u>, 270 F. 3d 292, 295 (6th Cir 2001) ("Because the petitioner is appearing pro se', the allegations in his petition must be construed in his favor, and his pleadings are held to a less stringent standard than those prepared by counsel."

<u>CONCLUSION</u>

The First Step Act is unambiguous.  FSA Time Credits begin accruing on the date of sentencing.

Mr. Sanchez is also entitled to maximum benefits under the Second Chance Act, that he is a "low risk level" and "low need" prisoner. The Bureau's stance that "to the extent practicable" grants them an "option" to apply the SCA after being able to send prisoners to prerelease custody for over a quarter of a century is absurd. All other similar arguments have been foreclosed by the Supreme Court in Loper.

The Bureau, by statute, requires their officers and employees "responsible for administering" the FSA to "demonstrate competence." (3632(f)). Therefore the Bureau has NO excuses for why they continue to violate the unambiguous precepts of the First Step Act. Therefore the collective actions of the Bureau, its officers and employees must constitute deliberate indifference. Not only towards Mr. Sanchez but also Congress and the courts. That these officer and employees, having been trained, are acting in a knowing and willful manner under the color of law, actually violates federal criminal statute. By pointing this out Mr. Sanchez is likely to face retaliation from prison staff. Even though the Director told Congress she would fire any employee who retaliated against inmates. It is commonplace at Yazoo.

Mr. Sanchez has complied with the Administrative Remedies process that the prison has made "available". The process is futile, as he was eligible for conditional release over 12 months ago.

Mr. Sanchez is right with the law and prays this honorable court direct the BOP to properly calculate his FSA Time Credits beginning on his date of sentence (4-26-2019) in compliance with 3632(d)(4)(B)(ii). He has a home to return to and a family that has been waiting nearly 6 years for his release. He prays this court will direct the Bureau to place him directly in home confinement. as prioritized in 3624(g)(2)(A).

Because Mr. Sanchez is eligible for both the FSA and SCA he asks this

Court to structure any favorable ruling so that:

(1) The 365 days (FTCs toward release) be deducted first, adjusting his statutory release date (2-22-2026 becomes 2-22-2025).

(2) This leaves only 145 days of benefits under the Second Chance Act (10-1-24 to 2-22-2025) be applied next, making him eligible for immediate release.

(3) The remaining 595 credits earned to date plus the remaining credits he would earn between 10-1-24 and 2-22-25 (60 ETCs) total 655 Time Credits be applied toward reduction of his term of supervision pursuant to 18 USC 3632(d)(4)(C).  Reducing his supervised release from 5 years to 3 years, 2 months and 10 days (+/- 7 days).

This 2241 Motion is respectfully submitted this 30 day of Sept 2024.

Jesus Sanchez-Ledesma
62773-298

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


JESUS SANCHEZ-LEDESMA, 62773-298,
        Petitioner, Pro Se,


        v.                                      Case No:


WARDEN WINGFIELD, FCI YAZOO CITY LOW 1,
        Respondent


CERTIFICATE OF SERVICE
28 USC 2241 MOTION


I certify under penalty of perjury pursuant to 28 USC 1746 the foregoing
is true and correct to the best of my knowledge and ability.

Further it was placed in the prison mailbox on 3 day of Sept 2024
pursuant to Houston v. Lack, 487 US 266, 275, 108 s. Ct. 2379, 101 L. Ed. 2d
245 (1988) ("Under the prison mailbox rule a prisoner's complaint is considered
filed on the date he placed it in the prison mail system.")

Petitioner relies on the court's electronic delivery system to provide the
Respondent a copy of this Motion and asks the court to provide the Petitioner
a complete file stamped copy to his current address.

Respectfully submitted,

Jesus Sanchez-Ledesma
62773-298
FCI Yazoo City Low 1
PO Box 5000
Yazoo City, MS 39194